**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ZANG WOOD**,

    Plaintiff,

    vs.                      No. CIV-05-549 MCA/WPL

**THE SAN JUAN BD. OF COUNTY**
**COMM'RS, WALLACE CHARLEY,**
**JACK FORTNER, TONY ATKINSON,**
**WILSON RAY, THOMAS HAVEL, and**
**PARIS DERIZOTIS, in their Individual Capacities,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on *Plaintiff's Motion for Default Judgment Against Defendant Derizotis* [Doc. 7], filed August 29, 2005, and *Defendant Derizotis's Motion to Dismiss* [Doc. 13], filed October 5, 2005. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants the motion to dismiss and denies as moot the motion for default judgment.

**I. BACKGROUND**

    The following factual assertions and allegations are taken from Plaintiff Zang Wood's *Complaint* and, for purposes of the pending motion to dismiss, are accepted as true. See Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).

    Plaintiff Zang Wood is a resident of Farmington, New Mexico and describes himself as "an outspoken critic of the San Juan County Commission and the manner in which

County officials operated San Juan County." [Doc. 1 at 2]. Defendants are the San Juan Board of County Commissioners ("the Board of Commissioners" or "Board"); Commissioners Wallace Charley, Wilson Ray, and Jack Fortner; San Juan County Manager Tony Atkinson; San Juan County Corrections Division Director Thomas Havel; and San Juan County Magistrate Judge Paris Derizotis. [Id.].

Between 1994 and 2002, Plaintiff attended a number of meetings of the Board of Commissioners, often speaking critically of county officials. [Doc. 1 at 3]. Plaintiff questioned, for example, what he believed to be acts of cronyism by certain commissioners, the propriety of the commissioners' use of public funds, and the commissioners' alleged use of county vehicles for personal needs. Although Plaintiff attended numerous Board meetings, the acts giving rise to the complained-of conduct in this action occurred during or after Board meetings held April 16, 2002, May 1, 2002, and May 21, 2002. [Id. at 3-4].

On April 16, 2002, Plaintiff attended a Board meeting during which he questioned what he believed to be the improper and illegal use of county vehicles for personal business by unnamed commissioners. [Doc. 1 at 4]. After attending the May 1, 2002 meeting, Plaintiff was standing outside the San Juan County Administration Building when Defendants Charley and Ray approached and confronted him "in a hostile, accusatory, and threatening manner concerning Plaintiff's criticisms of the Commission." [Id.]. According to Plaintiff, Defendant Charley stated, "I hear you have a problem with me driving a County vehicle." Plaintiff replied, "I do not have a problem with you using a County vehicle, I have

a problem with you using it for personal business." [Id.]. Plaintiff contends that Defendant Charley then accused Plaintiff and Plaintiff's wife of having engaged in criminal conduct when Plaintiff's wife worked for the County Assessor. A verbal altercation between Plaintiff and Defendant Charley ensued. [Id. at 4-5].

Plaintiff next attended a Board meeting held May 21, 2002, at which time he requested an apology for what he deemed Defendant Charley's defamatory comments on May 1, 2002. Plaintiff stated his intention to pursue legal action if no apology were extended. [Doc. 1 at 5-6]. Rather than apologize, Plaintiff maintains that on June 10, 2002 Defendant Charley filed criminal charges of assault and disorderly conduct against him in San Juan County Magistrate Court. Plaintiff asserts that the decision to file charges was made as a result of concerted action taken by Defendant Charley and other Defendants and was done in retaliation for Plaintiff's having exercised his First Amendment right to speak critically of Defendants. [Id. at 6].

According to Plaintiff, at some point prior to September 9, 2002, Defendant Havel prepared and delivered *ex parte* to Defendant Derizotis ("Judge Derizotis") a false and misleading statement regarding the events of May 1, 2002 that (1) deliberately omitted mention of Defendant Charley's conduct, (2) misrepresented Plaintiff's conduct, and (3) falsely stated that Defendant Havel physically restrained Plaintiff from attacking Defendant Charley. [Doc. 1 at 6]. On September 9, 2002, Judge Derizotis held a pretrial conference at which he entered an order enjoining Plaintiff from attending Board meetings.

3

[Id. at 7]. According to Plaintiff, Judge Derizotis was biased against Plaintiff from the start of the hearing, took no evidence, did not allow Plaintiff to present evidence or cross-examine witnesses, and gave Plaintiff no notice of his contemplated action. [Id.]. Plaintiff maintains that Judge Derizotis "acted in the clear absence of all jurisdiction in the face of a state statute [that] specifically denies magistrate judges jurisdiction to issue injunctions." [Id.]. Plaintiff further alleges that Judge Derizotis's conduct violated plaintiff's Fourteenth Amendment right to due process and that Judge Derizotis's decision to issue the injunction was taken as a result of his communications with other Defendants and as part of a conspiracy to violate Plaintiff's constitutional rights. [Id.].

On October 22, 2002, Plaintiff, who had no attorney at the time, was prosecuted, found guilty, and sentenced to one year of probation and a fine of $250. [Doc. 1 at 7-8]. Plaintiff thereafter retained counsel and appealed from the decision of the Magistrate Court. Counsel succeeded in having the charges against Plaintiff dismissed with prejudice. [Id. at 8]. Plaintiff then filed this action pursuant to 42 U.S.C. § 1983, alleging that

> [t]he conduct of Defendants violated Plaintiff's First and Fourteenth Amendment rights because the acts and omissions complained of were motivated, in whole or in part, by a retaliatory animus due to the protected speech engaged in by Plaintiff described in his Complaint. Each Defendant acted intentionally, willfully and/or with deliberate indifference to the rights of Plaintiff. Defendants acted in concert and conspired with each other and/or with other persons not named in this Complaint to carry out the pattern, practice and course of conduct described above to violate Plaintiff's civil rights. Additionally, the conduct of Defendant Derizotis and other Defendants violated Plaintiff's Fourteenth Amendment right to

4

due process of law.

[Id. at 9]. Plaintiff contends that the San Juan Board of County Commissioners is liable because it maintains an unwritten custom or policy tolerating the taking of retaliatory action against citizens who exercise their First Amendment rights in a manner critical of San Juan County officials or policies. [Id.].

Judge Derizotis now moves, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the claims against him on the ground that he is protected by either absolute judicial immunity or qualified immunity. [See generally Doc. 13]. Judge Derizotis denies the allegation that he acted in the clear absence of all jurisdiction, which is the only circumstance under which a judge may be stripped of absolute judicial immunity. [Doc. 14 at 5]. Alternatively, contends Judge Derizotis, he is entitled to qualified immunity, since Plaintiff is unable to meet his burden of demonstrating that Judge Derizotis violated a constitutional or statutory right that was clearly established at the time of the conduct in question. [Id. at 9-10]. Plaintiff has not responded to the motion to dismiss.[1] [See generally Dkt. in case no. CIV-05-549 MCA/WPL].

## II. ANALYSIS

### A. Fed.R.Civ.P. 12(b)(6)

Under Fed.R.Civ.P. 12(b)(6), the Court may dismiss a complaint for failure to state

---

[1] By *Order* entered October 28, 2005, Plaintiff was given until December 15, 2005 to file a response to the motion to dismiss. [See Doc. 19]. As of January 9, 2006, no such response had been filed. [See generally Dkt. in case no. CIV-05-549 MCA/WPL].

a claim upon which relief may be granted.  Dismissal under this rule is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Additionally, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  GFF Corp., 130 F.3d at 1384.  Finally, although the plaintiff's pleadings are to be liberally construed, mere conclusory allegations without supporting factual averments will not suffice.  See Brown v. Zavaras, 63 F.3d 967, 972 (10th Cir. 1995).

### B. Absolute Judicial Immunity

As the Tenth Circuit recently explained, "[f]ederal courts have 'consistently adhered to the rule that judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities.'"  Beedle v. Wilson, 422 F.3d 1059, 1072 (10th Cir. 2005) (*quoting* Dennis v. Sparks, 449 U.S. 24, 27 (1980)).  The doctrine of absolute judicial immunity dates to at least 1872, when the United States Supreme Court held that the presiding judge of a court of general criminal jurisdiction could not be "subjected to responsibility for [the commission of a judicial act], however erroneous

the act may have been, and however injurious in its consequences it may have proved to the plaintiff." Bradley v. Fisher, 80 U.S. 335, 347 (1872). The Court reasoned that

> it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful. [Moreover], it would establish the weakness of judicial authority in a degrading responsibility.

Id.

Immunity will not be denied because judicial action was taken in error, was done maliciously, or was in excess of the judge's authority. Rather, a judge "will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356 (1978) (*quoting* Bradley, 80 U.S. at 351). In determining whether a judge has performed a judicial act or acted in the clear absence of jurisdiction, the Court looks to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity. Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994).

In this case, Plaintiff contends that, in issuing the injunction barring Plaintiff from meetings of the Board of Commissioners, Judge Derizotis "acted in the clear absence of all jurisdiction and in the face of a state statute [that] specifically denies magistrate judges jurisdiction to issue injunctions." [Doc. 1 at 7]. Although Plaintiff does not specify the

precise statutory section to which he refers, NMSA 1978 § 35-3-3 provides, in pertinent part, that "[a] magistrate has no jurisdiction *in a civil action* . . . to grant writs of injunction . . . ." NMSA 1978 § 35-3-3(C)(6) (emphasis added). The statutory section addressing the criminal jurisdiction of magistrate judges does not contain a similar prohibition against issuing injunctions. See NMSA 1978 § 35-3-4.[2]

Again, Plaintiff here asserts that on June 10, 2002, on the basis of the May 1, 2002 encounter and in an effort to retaliate against Plaintiff for having expressed criticism of the county commissioners, Defendant Charley filed criminal charges of assault and disorderly conduct against him in San Juan County Magistrate Court. Plaintiff further contends that

---

[2] Section 35-3-4 reads as follows:

> A. Magistrates have jurisdiction in all cases of misdemeanors and petty misdemeanors, including offenses and complaints under ordinances of a county. Magistrates also have jurisdiction in any other criminal action where jurisdiction is specifically granted by law, and they may hold preliminary examinations in any criminal action where authorized by law.
>
> B. Magistrates have jurisdiction over all offenses and complaints under ordinances of a municipality and may issue subpoenas and warrants and punish for contempt if that municipality has adopted an effective ordinance to provide for magistrate jurisdiction over municipal ordinances pursuant to the provisions of Subsection B of Section 35-14-1 NMSA 1978.
>
> C. In any criminal action in the magistrate court which is beyond the jurisdiction of the magistrate court, the magistrate may commit to jail, discharge or recognize the defendant to appear before the district court as provided by law. Whenever the defendant is bound over to the district court, the magistrate shall forthwith deliver to the clerk of the district court a transcript of all proceedings in the magistrate court in the action.

at some point prior to the pretrial conference of September 9, 2002, Defendant Havel prepared and presented *ex parte* to Judge Derizotis a statement containing false and misleading assertions regarding the events of May 1, 2002. According to Plaintiff, that statement, among other things, "deliberately omitted mention of Defendant Charley's provocative conduct, misrepresented Plaintiff's conduct, and falsely stated that Defendant Havel had had to physically restrain Planitiff from attacking Defendant Charley." [Doc. 1 at 6]. At the September 9, 2002 pretrial conference, Judge Derizotis announced his plan to enjoin Plaintiff from attending future Board of Commissioners meetings. Although Plaintiff refers to the injunction as "said civil injunction," [Doc. 1 at 7], the injunction clearly was entered as part of the ongoing criminal proceedings against Plaintiff and not during a civil action.

Although a magistrate judge has no jurisdiction to grant a writ of injunction in a civil action, "[m]agistrates have jurisdiction in all cases of misdemeanors and petty misdemeanors . . . ." NMSA 1978 § 35-3-4. Assault and disorderly conduct, the two offenses with which Plaintiff was charged, are characterized as petty misdemeanors. See NMSA 1978 §§ 30-3-1 ("Whoever commits assault is guilty of a petty misdemeanor.") and 30-20-1 ("Whoever commits disorderly conduct is guilty of a petty misdemeanor."). Because the injunction here was not entered in a civil action, and because magistrate judges have jurisdiction over such criminal matters as assault and disorderly conduct, the Court cannot say that Judge Derizotis acted in the clear absence of all jurisdiction. For that reason, the Court concludes that Judge

Derizotis is shielded by absolute judicial immunity for his decision to enter the injunction against Plaintiff.  Because the Court determines that the doctrine of absolute judicial immunity applies under the circumstances, the Court does not reach Judge Derizotis's alternative argument, that he would be entitled to qualified immunity if not afforded absolute judicial immunity.

### III. CONCLUSION

For the reasons stated, the Court concludes that Judge Derizotis is protected by absolute judicial immunity for his entry of an injunction barring Plaintiff from attending meetings of the San Juan Board of County Commissioners.  Because of this determination, the Court declines to address Judge Derizotis' alternative argument regarding his entitlement to qualified immunity.  As Plaintiff has failed to state a claim for which relief can be granted, Judge Derizotis's motion to dismiss will be granted.  Plaintiff's motion for entry of a default judgment against Judge Derizotis will be denied as moot.

**IT IS, THEREFORE, ORDERED** that *Defendant Derizotis's Motion to Dismiss* [Doc. 13], is **GRANTED**;

**IT IS FURTHER ORDERED** that *Plaintiff's Motion for Default Judgment Against Defendant Derizotis* [Doc. 7], is **DENIED AS MOOT**.

**SO ORDERED** this 10th day of January, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge